UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 14, 2018

THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL IMPROVEMENT &
SAFETY FUNDS OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS
LOCAL 15, 15A, 15C & 15D, AFL-CIO,
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS, INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 15, 15A,
15C & 15D, AFL-CIO,

                           Plaintiffs,

        v.

TIGHTSEAL CONSTRUCTION INC.,

                      Defendant.

------------------------------------------------------X

TIGHTSEAL CONSTRUCTION INC.,
MICHAEL DICKERSON,

             Third-Party Plaintiffs,

        v.

JUDLAU CONTRACTING INC.,

          Third-Party Defendant.

------------------------------------------------------X

17 Civ. 3670 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Tightseal Construction Inc. ("Tightseal") and its Chief Executive Officer,

Michael Dickerson, responded to a lawsuit seeking unpaid fringe benefit

contributions for a project on which Tightseal served as subcontractor by suing

the general contractor, Judlau Contracting Inc. ("Judlau"), for race

discrimination and breach of contract.  In that third-party action, Tightseal and

Dickerson allege that Judlau improperly terminated the subcontract with

Tightseal after subjecting Dickerson, who is African-American, to racial

harassment.  They further dispute Judlau's proffered reason for terminating

the contract — that Tightseal had failed to pay union fees — and instead

contend that Judlau rescinded its contract with Tightseal due to racial animus.

Third-Party Plaintiffs assert claims for breach of contract and unjust

enrichment; violations of 42 U.S.C. § 1981; and violations of the New York

State Human Rights Law, N.Y. Exec. Law §§ 290-297 ("NYSHRL"), and the New

York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131

("NYCHRL").

Third-Party Defendant Judlau now moves to dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure,

and for failure to state a claim under Rule 12(b)(6).  For the reasons stated

below, Judlau's motion is granted in part and denied in part.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Parties**

For purposes of the instant motion, the Court will accept as true the

well-pleaded allegations of the Amended Third-Party Complaint.  Tightseal is a

---

[1]    For ease of reference, the Court refers to the Amended Third-Party Complaint as "Am. Compl." (Dkt. #31); Third-Party Defendant's opening brief in support of its motion to dismiss as "Def. Br." (Dkt. #46); the Declaration of Howard Kleinhendler in support of Third-Party Defendant's motion as "Kleinhendler Decl." (Dkt. #47), and the copy of the

"100% [ ] African[-]American owned" construction company that is "registered with the State of New York … as a disadvantaged minority owned company." (Am. Compl. ¶¶ 5-7). "[I]t identifies as a black owned corporation to [those] it … conducts business with." (*Id.* at ¶ 43). Tightseal entered into agreements to serve as a subcontractor on the Queens Midtown Tunnel Rehabilitation project (the "Project"). (Dkt. #47-1 ("Subcontract"), Ex. A). Michael Dickerson is the Chief Executive Officer and President of Tightseal. (Am. Compl. ¶ 8; Subcontract 11). Third-Party Defendant Judlau is "a corporation and [ ] contractor engaged in [the] construction business in New York"; it served as the general contractor on the Project. (Am. Compl. ¶ 10; Subcontract 11).

### 2. The Subcontract and the Joint Check Agreement

On August 6, 2015, Tightseal entered into the Subcontract with Judlau, according to which Tightseal was to perform certain services relating to the Project, including work on the tunnel's lighting and fire standpipe systems. (Subcontract 1, 11, Ex. A).[2] Provisions relevant to the instant motion include[3]:

---

Judlau-Tightseal contract attached thereto as the "Subcontract" (Dkt. #47-1); Third-Party Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #53); and Third-Party Defendant's reply brief as "Def. Reply" (Dkt. #54).

[2] The Subcontract was executed on August 6, 2015, but recites that it is "made as of this 1st day of May, 2015." (Subcontract 1, 11). When describing the agreement, the Court references the August 6 execution date rather than the May 1 date.

[3] Though the Subcontract includes a broad arbitration provision, calling for the parties to arbitrate all disputes "arising out of or relating to this contract, or the breach thereof" (Subcontract 9), neither party has cited the provision in their papers or otherwise moved to compel arbitration. For that reason, the Court does not include it in the list of relevant provisions. Nor will the Court enforce the provision *sua sponte*. *See Lefkowitz* v. *Reissman*, No. 12 Civ. 8703 (RA), 2014 WL 925410, at *8 (S.D.N.Y. Mar. 7, 2014) ("enforcing an arbitration clause *sua sponte* might be inappropriate in certain situations[, including] … when neither party has explicitly requested arbitration"); *Amiron Dev. Corp.* v. *Sytner*, No. 12 Civ. 3036 (JS) (ETB), 2013 WL 1332725, at *3

- *Dispute Resolution Procedure*:  This provision requires Tightseal to provide Judlau with written notice of any "claim [for] compensation for any damage sustained by reason of any act or omission of the … Contractor … within two (2) calendars days after sustaining such damage," and "a verified and itemized statement of the details and amount of such damage" within "thirty (30) days of providing [the] initial written notice[.]" (Subcontract 3).

- *Termination for Cause*:  Under this provision, "[Judlau] may deem th[e] contract materially breached if [Tightseal] … becomes the subject of any claim of failure to pay the appropriate wage rates (including fringe benefits)[.]"  (*Id.* at 7).  In the event of such breach, Judlau may terminate the contract with three days' written notice to Tightseal.  (*Id.*).

- *Termination for Convenience*:  This provision permits Judlau, "by three (3) days written notice, to terminate and cancel th[e] Agreement, without [Tightseal] being at fault, for its own convenience[.]"  (*Id.* at 9).

- *Attachment A*:  This attachment, titled "Price and Contract Work," lists the work items for which Tightseal was responsible and the amount it would be paid for each item.  (*Id.*, Ex. A).  The items include "Removal of Fire Standpipe System," "Light Wall Trench Demolition," "Cast-In-Place Concrete Lighting Trench," and "Light Trench Finishing (waterproofing)."  (*Id.*).

- *Attachment D*:  This form, titled "Diversity Plan," details Tightseal's obligations to "obtain not less than [100%] of disadvantaged-owned [and] minority-owned … business enterprise participation" in their work under the Subcontract.  (*Id.*, Ex. D).

Dickerson and Tightseal identify a second agreement between the parties: a Joint Check Agreement (the "JCA"), pursuant to which "Judlau was charged with the responsibilities for paying union employees' fringe benefits to

---

(E.D.N.Y. Mar. 29, 2013) ("the Court has no authority to *sua sponte* enforce an arbitration provision" (citation omitted)).

their welfare funds." (Am. Compl. ¶ 15). This agreement, in conjunction with the Subcontract, required "Judlau … [to] collect the contributions due the welfare funds from money payable to Tightseal and … carry out the fiduciary duty of paying the union employee[s'] fringe benefits[.]" (*Id.* at ¶ 17). Dickerson and Tightseal claim that, though Judlau initially made fringe benefit payments as required under the JCA, it "unilaterally ceased payments to the funds for undisclosed reasons." (*Id.* at ¶ 18). Accordingly, "Tightseal [was] forced to assume responsibility for th[ese] payment[s.]" (*Id.* at ¶ 22).

### 3. Tightseal's Agreement with Capstone

To finance Tightseal's work under the Subcontract, Tightseal and Dickerson assigned their rights to some future payments to the factoring company Capstone in exchange for advances on the amounts due. (Am. Compl. ¶¶ 26-27). Judlau was allegedly aware of the assignment, and Capstone did receive "certain payments" on the balances due. (*Id.* at ¶¶ 28-29, 35). Though the pleadings are not entirely clear on this point, it appears that Judlau ceased making payments to Capstone. (*Id.* at ¶ 37). Because Dickerson had guaranteed payment on the invoices to Capstone, he became personally responsible for the outstanding balances due to Capstone. (*Id.* at ¶¶ 32, 34, 38-39).

### 4. Third-Party Defendant's Breach of the Agreements

#### a. The Subcontract

Third-Party Plaintiffs allege that Judlau impermissibly terminated the Subcontract on or about January 5, 2017. (Am. Compl. ¶ 31). Dickerson and

Tightseal claim that "[b]y terminating the contract between the parties in bad faith and in violation of the terms … Judlau breached the agreement between the parties." (*Id.* at ¶ 98). They claim that Judlau "acted in an unreasonable way by making up unsubstantiated and meaningless stories regarding Tightseal's refusal to pay union benefits when the money to pay the benefit[s] was one hundred percent within the control of Judlau[.]" (*Id.* at ¶ 74). Dickerson and Tightseal suggest that Judlau used their alleged failure to pay fringe benefits as a pretext to terminate the Subcontract for discriminatory reasons. (*Id.* at ¶ 74).[4]

In Dickerson's and Tightseal's estimation, Judlau terminated the Subcontract due to racial animus. (Am. Compl. ¶ 50). They allege that at least one Judlau employee — the project manager, or the superintendent on the Queens Midtown Tunnel project — made racist statements to Dickerson. (*See id.* at ¶ 62 ("Judlau, its agents, and superintendents for the project harassed employees of Tightseal including Dickerson, the CEO of Tightseal, by calling him names including 'boy' and other racially derogatory names."), ¶ 82 ("Tightseal was subjected to [a] constant barrage of racial slurs through the abuse of its chief executive, Michael Dickerson[,] who was constantly called racial slurs and the N word by the project manager."), ¶ 85 ("The constant reference to Dickerson as a boy and [expletive] created a very uncomfortable and hostile situation [for] him at the work site."), ¶ 86 ("[Dickerson] was told by

---

[4]    The Court notes that the "Termination for Convenience" clause may be relevant to this allegation, but as neither party made reference to it, the Court will not speculate as to its significance. (*See* Subcontract 9).

the superintend[ent] that he was lucky because his people don't work hard to make any good money and thank God for the minority set aside.")).  Third-Party Plaintiffs further suggest that "Judlau abused the status of Tightseal as a minority-owned business enterprise to seek a contract and then terminate[d the Subcontract] without a legitimate reason in order to get rid of the minority contractor[.]"  (*Id.* at ¶ 92).

### b. The Joint Check Agreement

Dickerson and Tightseal further allege that, "without any good basis," Judlau "declined to enforce the joint check agreement[.]"  (Am. Compl. ¶ 21). This forced Tightseal to "assume responsibility for [the] payment" of fringe benefits to union funds "although Judlau [wa]s keeping the money that belonged to Tightseal and [should have been] used to pay the welfare fund[.]" (*Id.* at ¶¶ 19-22).  The JCA was not attached to the Amended Third-Party Complaint and has not otherwise been provided to the Court.

## B. Procedural Background

On May 16, 2017, several union funds brought an action against Tightseal seeking to collect unpaid fringe benefit payments, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *codified in part at* 29 U.S.C. ch. 18.  (Dkt. #1).  Dickerson and Tightseal filed a third-party complaint against Judlau on September 19, 2017, and amended their complaint on January 6, 2018.  (Dkt. #17, 31).

On February 6, 2018, Judlau requested leave to file a motion to dismiss, which leave the Court granted the following day.  (Dkt. #36, 37).  Judlau timely

filed its motion to dismiss on February 28, 2018. (Dkt. #42). After the Court granted Dickerson and Tightseal an extension of time to file their opposition (Dkt. #50), they filed their brief on April 18, 2018 (Dkt. #53). Judlau timely filed a reply brief on May 1, 2018. (Dkt. #54).

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Pursuant to Rule 12(b)(1)

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff … but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations and quotation marks omitted). When subject matter jurisdiction is at issue, the Court may properly consider evidence outside the pleadings, including affidavits and exhibits. *See Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *Zappia Middle E. Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### 2. Motions to Dismiss Pursuant to Rule 12(b)(6)

Third-Party Defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) requires that the Court draw "all reasonable inferences" in Third-Party Plaintiffs' favor. *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). This requires that Third-Party Plaintiffs "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss under Rule 12(b)(6), the Court looks to "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion to dismiss). "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

### B. Analysis

Judlau asserts that Dickerson's and Tightseal's Section 1981 claims fail under both Rules 12(b)(1) and 12(b)(6). Judlau further claims that, because

Third-Party Plaintiffs' federal claims fail, the Court lacks subject matter jurisdiction over their remaining claims. Given that resolution of Judlau's arguments concerning the Section 1981 claims potentially impacts resolution of the state-law claims, the Court begins with the federal claims. Each Third-Party Plaintiff advances a Section 1981 claim; the Court addresses each in turn, before turning to Third-Party Plaintiffs' remaining claims.

**1. The Section 1981 Claim Brought by Michael Dickerson Fails, But the Claim Brought by Tightseal Survives**

To succeed on a Section 1981 claim, a plaintiff must sufficiently allege that "[i] the plaintiff is a member of a racial minority; [ii] [there was] an intent to discriminate on the basis of race by the defendant; and [iii] the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian* v. *Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981 proscribes discrimination in the "enjoyment of benefits, privileges, terms, and conditions of a contractual relationship[.]" *Robinson* v. *Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015); 42 U.S.C. § 1981. "To establish a violation of [Section] 1981, a plaintiff must show that a defendant's acts were purposefully discriminatory and racially motivated." *Weiss* v. *La Suisse*, 141 F. App'x 31, 33 (2d Cir. 2005) (summary order) (internal citations omitted).

**a. Dickerson's Section 1981 Fails**

Dickerson asserts a Section 1981 claim, alleging that Judlau violated his right "to make and enforce contracts" free from racial discrimination. (Am.

10

Compl. ¶¶ 108-13).  Judlau does not dispute that Dickerson is a member of a racial minority.  (*See* Def. Br. 8-11).  Instead, Judlau questions Dickerson's standing to bring a Section 1981 claim, arguing that Dickerson lacks standing because (i) "[t]he only contracts to which Mr. Dickerson is alleged [to be] a party are [those] executed with non-party, Capstone," which contracts were not breached; and (ii) Dickerson fails to allege that "Judlau had the power or authority to influence or control non-party, Capstone."  (*Id.* at 10).  In the alternative, Judlau questions the sufficiency of the pleadings, arguing, among other things, that "the Third-Party Complaint does not contain a single allegation that Judlau impaired … Dickerson's ability to make or enforce contracts because of race," and instead merely "slaps everything with generic 'discrimination' and 'hostile environment' labels."  (*Id.*).

The Court begins, as it must, with the threshold question of Dickerson's standing to bring a Section 1981 claim.  The issue here is whether Dickerson, who was not a party to the Subcontract or the JCA — or, for that matter, to any other contract with Judlau — may nonetheless bring a Section 1981 claim against Judlau.  Dickerson argues that he may do so because, in separate contracts with Capstone, he personally guaranteed payments due under the Subcontract.  As he explains, "[t]he guarantees by Dickerson were done for the sole purpose of ensuring that Tightseal [would be] able to enforce and execute its contractual obligation with Judlau[.]"  (Pl. Opp. 6-7).  Dickerson believes that this gives him standing to bring a Section 1981 claim against Judlau.

Dickerson is wrong.  In *Domino's Pizza, Inc.* v. *McDonald*, a case to which both parties cite, the Supreme Court examined standing requirements for individual shareholders of a corporation who wish to bring Section 1981 claims.  546 U.S. 470 (2006).  There, Respondent John McDonald, an African-American man and the sole shareholder and president of JWM Investments, Inc., sued Domino's for Section 1981 violations.  *Id.* at 473.  JWM and Domino's had entered into several contracts.  *Id.*  After Domino's agent refused to execute certificates necessary for JWM to perform work, and after she informed McDonald that she "do[es]n't like dealing with you people anyway," JWM brought a breach of contract claim against Domino's, and McDonald filed a Section 1981 claim against Domino's in his personal capacity.  *Id.* at 473-74.

In examining McDonald's standing to bring a Section 1981 claim, the Supreme Court noted that "the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts."  *McDonald*, 546 U.S. at 477.  It accordingly held that, because McDonald did not himself have any rights under the contract with Domino's, he lacked standing to bring a Section 1981 claim.  *Id.* at 479-80.  The Court explained that only a party with rights under a contract may bring a Section 1981 claim in connection with that contract.  *Id.* at 476-77.  More generally, "a plaintiff cannot state a claim under [Section] 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'"  *Id.* at 479-80.  And although third-party beneficiaries may bring Section 1981 claims, *see Anders* v. *Verizon Servs. Corp.*, No. 09 Civ. 8919

(DLC), 2011 WL 5837239, at *2-3 (S.D.N.Y. Nov. 18, 2011), Dickerson does not allege that he is a third-party beneficiary of the contract between Tightseal and Judlau.

Dickerson's argument that Judlau interfered with his contract with Capstone misses the mark. As a sister court in this District has explained, "liability under [Section] 1981 for interference with a third-party contract attaches only to persons who actually had the power or authority to prevent the plaintiffs from contracting with the third party." *Ginx, Inc.* v. *Soho All.*, 720 F. Supp. 2d 342, 358 (S.D.N.Y. 2010) (citing *Harris* v. *Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002) (requiring that a plaintiff bringing a Section 1981 claim for interference with a third-party contract demonstrate "that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment")); *see also Robledo* v. *Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013) (holding that "Section 1981 protects against the interference with a third-party contract, but liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party").

Here, Third-Party Plaintiffs have failed to allege that Judlau had, much less exercised, the ability to interfere directly with Dickerson's contract with Capstone or to prevent Dickerson from entering into contracts with third parties. For that reason, and because Dickerson was neither a party to nor a third-party beneficiary of the contract between Tightseal and Judlau,

Dickerson lacks standing to bring a Section 1981 claim. The Court therefore dismisses the claim.[5]

### b.    Tightseal's Section 1981 Claim Survives

Tightseal itself advances a Section 1981 claim against Judlau, claiming that it is "a disadvantaged African[-]American company" and that Judlau "subjected [it] to race discrimination[.]" (Am. Compl. ¶¶ 111-12).[6] Judlau seeks to dismiss this claim under Rule 12(b)(6),[7] arguing that Third-Party Plaintiffs have failed adequately to allege that a contract was impaired, or that Judlau acted with discriminatory intent. As Judlau states: "[T]he Complaint lacks the required specificity to describe … discriminatory intent" and "does

---

[5]    Because Dickerson lacks standing to bring a Section 1981 claim, the Court here will not address the merits of Judlau's argument regarding the sufficiency of the pleadings of discriminatory intent. The Court instead examines that argument in connection with Tightseal's Section 1981 claim. (*See* discussion *infra* at Section B(1)(b)).

[6]    Judlau does not dispute that minority-owned businesses, like Tightseal, may bring Section 1981 claims. The Court notes that, though there is no controlling precedent on point, the weight of relevant case law suggests that minority-owned businesses are considered to have racial identities and may advance Section 1981 claims. *See T & S Serv. Assocs., Inc.* v. *Crenson*, 666 F.2d 722, 725 (1st Cir. 1981); *Rosales* v. *AT&T Info. Sys., Inc.*, 702 F. Supp. 1489, 1495 (D. Colo. 1988); *Org. of Minority Vendors, Inc.* v. *Ill. Cent. Gulf R.R.*, 579 F. Supp. 574, 588 (N.D. Ill. 1983); *Howard Sec. Servs., Inc.* v. *Johns Hopkins Hosp.*, 516 F. Supp. 508, 513 (D. Md. 1981). And at least one court in this Circuit has held that any "limitation on [Section] 1981 standing for a corporation should not be construed as applying to situations where a corporation alleges that it was injured because of its relationship with a person of minority racial identity." *John and Vincent Arduini Inc.* v. *NYNEX*, 129 F. Supp. 2d 162, 169 (N.D.N.Y. 2001) (citation omitted). Accordingly, the Court sees no reason to challenge, *sua sponte*, the parties' assumption that despite Tightseal's corporate identity, it may advance a Section 1981 claim.

[7]    Judlau argues that Tightseal lacks standing to bring a Section 1981 claim relating to the agreements between Dickerson and Capstone. Though Judlau is not wrong on the law, its argument is inapposite: Tightseal's Section 1981 claims relate to the Subcontract between Tightseal and Judlau, not to the Dickerson-Capstone agreements. (*See, e.g.*, Am. Compl. ¶ 50 ("Judlau also improperly terminated Tightseal['s] contract by acting in bad faith and terminating the contract for reasons that are based on racial animus.")).

not contain a single allegation that Judlau impaired Tightseal's or Dickerson's abilities to make or enforce contracts because of race." (Def. Br. 1, 10).

The Court disagrees. Tightseal has, in fact, sufficiently alleged that Judlau impinged upon Tightseal's right to "make and enforce contracts" and that it did so with discriminatory intent. 42 U.S.C. § 1981. As to whether "the discrimination concerned one or more of the activities enumerated in the statute[,]" *Mian*, 7 F.3d at 1087, the Court easily finds that Tightseal has adequately alleged an impairment of its ability to enforce the Subcontract. It has alleged, as it must, that it "ha[s] rights under the contractual relationship[.]" *McDonald*, 546 U.S. at 476. It has further alleged that Judlau "entered into a contract with Tightseal to furnish certain work, labor, and services[ ] necessary for the construction project known as [the] Queens Midtown Tunnel Rehabilitation Project[.]" (Am. Compl. ¶ 24). In exchange for work performed, Tightseal was to receive payments from Judlau, as well as to require Judlau to make fringe benefit payments to various union funds. (*See id.* at ¶¶ 17, 36, 48). Third-Party Plaintiffs claim that Judlau terminated the contract improperly and failed to make timely payments. (*See id.* at ¶ 71 ("Judlau violated very fragrantly [the] terms of the … contracts it signed with Tightseal by refusing to make payment[s] … as it was required to do[.]")). These allegations, taken as true, suffice to establish that Tightseal had contractual rights and that Judlau infringed upon those rights.

Tightseal also adequately alleges that Judlau acted with discriminatory intent. To satisfy this element, "a plaintiff must 'specifically allege the events

claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of a racially discriminatory intent.'" *Weiss* v. *La Suisse*, 131 F. Supp. 2d 446, 449 (S.D.N.Y. 2001) (quoting *Yusuf* v. *Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994)).  Tightseal asserts that Judlau terminated the agreements due to racial animus directed principally at Dickerson.  (Am. Compl. ¶¶ 42, 50, 60, 64-65).

To support their claim, Third-Party Plaintiffs point to racist statements allegedly made by one or more Judlau employees.  They contend that "Mr. Dickerson was … subject to racial harassment and called racist names *as he attempted … to ensure that Tightseal c[ould] meet its corporate obligations*[.]" (Am. Compl. ¶ 42 (emphasis added)).  They further allege that Dickerson was "subjected to [a] constant barrage of racial slurs" and "constantly called racial slurs and the N word by the project manager." (*Id.* at ¶ 82).  "Although Mr. Dickerson protested the use of racially derogatory language in addressing him, the project manager did not stop." (*Id.* at ¶ 83).  That same project manager "began to find unnecessary fault with Tightseal in order to terminate the contract and bring in some other entity they favored." (*Id.* at ¶ 91).  Third-Party Plaintiffs further claim that "Judlau, its agents, and superintendents for the project harassed … Dickerson, the CEO of Tightseal, by calling him names including 'boy' and other racially derogatory names." (*Id.* at ¶ 62).  "The constant reference to Dickerson as a boy and [expletive] created a very uncomfortable and hostile situation f[or] him at the work site." (*Id.* at ¶ 85). And "[h]e was told by the superintend[ent] that he was lucky because his

people don't work hard to make any good money and thank God for the minority set aside." (*Id.* at ¶ 86).

Taken as true, the pleadings adequately "allege a causal connection between the plaintiffs' race and the actions taken by [Judlau's] officials" in terminating the Subcontract. *Weiss*, 131 F. Supp. 2d at 450; *see also Dickerson* v. *State Farm Fire & Cas. Co.*, No. 95 Civ. 10733 (MBM), 1996 WL 445076, at *4 (S.D.N.Y. Aug. 1, 1996) ("Evidence of bias may appear in various forms. For example, a plaintiff might identify statements reflecting bias attributable to the decision-makers responsible for the adverse action, or patterns of conduct that suggest the influence of race in decision-making."). The Second Circuit has explained that "[o]penly discriminatory oral statements merit similarly straightforward treatment." *Soules* v. *U.S. Dep't of Hous. & Urban Dev.*, 967 F.2d 817, 824 (2d Cir. 1992). "At the pleading stage, [allegations of openly discriminatory oral statements] are sufficient to support [Section] 1981 claims." *Robledo*, 965 F. Supp. 2d at 476 (citing *Hicks* v. *IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (finding that allegations of derogatory comments to African-Americans, including "send them to school, clean them up[,] and they still belong in the cotton field" and "I'm tired of black people taking taxes," were "sufficient to give rise to an inference of discriminatory intent" and sustain a Section 1981 claim)). Here, Third-Party Plaintiffs' allegations of racially inflammatory comments made by a superintendent and project manager, and their allegation that the project manager had authority to terminate Tightseal's contract and hire another company to replace Tightseal,

give rise to a plausible inference that Judlau acted with discriminatory intent when it terminated Tightseal's contract. (*See* Am. Compl. ¶¶ 62, 82-83, 86, 91-93). Tightseal's Section 1981 claim therefore survives.[8]

### 2. Judlau's Motion to Dismiss the State-Law Claims Is Granted in Part and Denied in Part

#### a. The NYSHRL Claims Fail

Additionally, Third-Party Plaintiffs argue that Judlau violated the NYSHRL — in particular, New York Executive Law § 296(1) — "by engaging in unlawful discriminatory practices against Plaintiffs." (Am. Compl. ¶ 101). Judlau "discriminated against Dickerson because of race" and subjected Third-Party Plaintiffs to "unlawful discriminatory practices" and a "hostile work environment[.]" (*Id.* at ¶¶ 102-03). Though Third-Party Plaintiffs do not specify whether they assert NYSHRL claims on behalf of both Dickerson and Tightseal, or solely on behalf of Dickerson, their use of the plural "Plaintiffs" in the relevant pleadings suggests that they advance claims on behalf of both Tightseal and Dickerson. (*Id.* at ¶¶ 101-03).

The NYSHRL provides, in relevant part, that:

> [i]t shall be an unlawful discriminatory practice ... [f]or an employer ... because of an individual's age, race, creed, [or] color ... to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions[,] or privileges of employment.

---

[8] Judlau argues that, if the Court were to dismiss the Section 1981 claims, it would lack subject matter jurisdiction over the remaining claims. (Def. Br. 12). Because the Section 1981 claim survives as to Tightseal, Judlau's argument against the exercise of pendent jurisdiction is moot.

N.Y. Exec. Law § 296(1).  It is well established that "the NYSHRL only prohibits racial discrimination in the traditional employment context."  *Mahmud* v. *Kaufmann*, 496 F. Supp. 2d 266, 274 (S.D.N.Y. 2007) (collecting cases); *see also Eisenberg* v. *Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) ("[T]he NY[S]HRL cover[s] 'employees,' not independent contractors."); *Murphy* v. *ERA United Realty*, 674 N.Y.S.2d 415, 416 (2d Dep't 1998) (holding that "Executive Law § 296(1)(a) only governs discrimination in the traditional employer-employee relationship and not in the employment of independent contractors[.]" (citation omitted)).

The question, then, is whether Dickerson or Tightseal has adequately alleged a traditional employment relationship with Judlau.  Neither has done so.  Instead, Third-Party Plaintiffs allege that Dickerson "is the chief executive of Tightseal and an employee of Tightseal" (Am. Compl. ¶ 8), and that Tightseal was Judlau's subcontractor (*see id.* at ¶¶ 31, 46, 67, 73).  Nor do the pleadings permit the Court to infer the existence of a traditional employment relationship between either or both Third-Party Plaintiffs and Judlau.  In examining whether a traditional employment relationship exists within the meaning of the NYSHRL, courts often consider, *inter alia*, the following factors:

> the hiring party's right to control the manner and means by which the product is accomplished[;] … the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying

> assistants; whether the work is part of the regular
> business of the hiring party; whether the hiring party is
> in business; the provision of employee benefits; and the
> tax treatment of the hired party.

*Cmty. for Creative Non-Violence* v. *Reid*, 490 U.S. 730, 751-52 (1989) (internal

citations omitted); *see also Salamon* v. *Our Lady of Victoria Hosp.*, 514 F.3d

217, 227-32 (2d Cir. 2008) (applying the *Reid* factors to NYSHRL claims).

Courts often "place special weight on the extent to which the hiring party

controls the 'manner and means' by which the worker completes her assigned

tasks." *Eisenberg*, 237 F.3d at 117.

Though the Subcontract provided Judlau with some control over the

scope of work performed by Tightseal, neither Tightseal nor Dickerson can be

considered Judlau employees. As to Dickerson, the pleadings and the

Subcontract indicate that Dickerson was employed by Tightseal, not Judlau.

(Am. Compl. ¶ 8, Subcontract 11). Third-Party Plaintiffs do not allege that

Judlau had the ability to assign additional projects to Dickerson. Nor do they

allege that Judlau had any obligation to provide Dickerson with a salary or any

other financial benefit, which strongly suggests that Dickerson was not

Judlau's employee. The Second Circuit has explained that, "[w]here no

financial benefit is obtained by the purported employee from the employer, no

'plausible' employment relationship of any sort can be said to exist[.]" *York* v.

*Ass'n of the Bar of City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002) (internal

quotation marks and citation omitted); *see id.* (identifying the following factors

as indicative of "financial benefit": "salary or other wages; employee benefits,

such as health insurance; vacation; sick pay; or the promise of any of the

foregoing" (internal quotation marks and citation omitted)). "[C]ompensation by the putative employer to the putative employee ... [is] an essential condition to the existence of an employer-employee relationship." *Id.* (citation omitted); *see also Nelson* v. *Beechwood Org.*, No. 03 Civ. 4441 (GEL), 2004 WL 2978278, at *3-4 (S.D.N.Y. Dec. 21, 2004) (finding that lack of pay is dispositive as to the existence of an employer-employee relationship). Here, because there is no allegation of a financial benefit due from Tightseal to Dickerson, the Court cannot find that Dickerson has adequately alleged a traditional employment relationship with Judlau. His NYSHRL claim therefore fails.

Tightseal has similarly failed to allege a traditional employment relationship with Judlau. Section 296(1)(a) of the NYSHRL protects "individuals" who have been discriminated against in employment on the basis of race. *See* N.Y. Exec. Law § 296(1)(a). Though the statute does not define the term "individual," it does distinguish it from "partnerships, associations, [and] corporations," suggesting that the term applies to natural persons rather than to corporations. *See* N.Y. Exec. Law § 292(1). Indeed, the statute defines "person" as "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." *Id.* If the Court were to consider Tightseal to be an "individual" under the statute, it would render redundant the phrase, "partnerships, associations, [and] corporations[.]" *Id.* The Court declines to do so, given the imperative to "avoid a reading which renders some words altogether redundant." *Gustafson* v. *Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995). Reading the term "individual" to

refer to natural persons, rather than to corporate entities, is further supported by the definition of "employee" in Section 292(6) of the statute, which precludes "any individual employed by *his or her* parents, spouse or child[.]"  N.Y. Exec. Law § 292(6) (emphasis added).  The reference to "individual" as a gendered term confirms that the legislature intended for the term to refer to natural persons rather than to corporate entities.

Even if the statutory language covered corporations, Tightseal has not adequately alleged that it ever had a traditional employer-employee relationship with Judlau.  Throughout, it refers to its relationship as one between a general contractor and a subcontractor.  (Am. Compl. ¶¶ 31, 46, 67, 73).  There are no allegations that Judlau had the right to assign additional projects to Dickerson, or that Judlau controlled the manner and means by which Tightseal was to perform its work or the source of the instrumentalities and tools used in connection thereto.  Nor is there any indication that Tightseal or its workers were to receive employee benefits, salaries, or regular wages.  Even if the statute had been intended to protect corporations — which it was not — Tightseal has failed to allege an employer-employee relationship with Judlau. Accordingly, Tightseal's NYSHRL claim fails as a matter of law.

### b.    The NYCHRL Claims Fail

Third-Party Plaintiffs allege that Judlau violated three provisions of the NYCHRL:  Section 8-107(1) (employment discrimination), Section 8-107(6) (aiding and abetting discrimination), and Section 8-107(18) (unlawful boycotting or blacklisting for discriminatory reasons).  (Am. Compl. ¶¶ 104-07).

Third-Party Plaintiffs advance these claims on behalf of both Dickerson and Tightseal. (*Id.*).

The Court easily disposes of these claims. A claim for employment discrimination under Section 8-107(1) requires a plaintiff to allege adequately a traditional employer-employee relationship. *Wang* v. *Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013) ("The plain terms of § 8-107(1)(a) make clear that the provision's coverage only extends to employees, for an 'employer' logically cannot discriminate against a person in the 'conditions or privileges of employment' if no employment relationship exists."). The Court has already found that neither Tightseal nor Dickerson has adequately alleged that they were Judlau employees. (*See supra* at Section B(2)(a)). Third-Party Plaintiffs' Section 8-107(1) claims fail for the same reason as their NYSHRL claims. And because Third-Party Plaintiffs' employment discrimination claims fail under both the NYSHRL and the NYCHRL, so too must their aiding and abetting claims fail under Section 8-107(6). *See Falchenberg* v. *N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009) (summary order) ("aiding and abetting is only a viable theory where an underlying violation has taken place").

The Court next turns to the claims under Section 8-107(18). This statutory provision is "directed at curbing the types of business practices that involve the concerted use of economic means to disadvantage the trade or commercial activities of a member of [a] protected class[.]" *Jablonski* v. *Special Counsel, Inc.*, No. 16 Civ. 5243 (ALC), 2017 WL 4342120, at *5 (S.D.N.Y.

Sept. 28, 2017) (citing *Scott* v. *Mass. Mut. Life Ins. Co.*, 86 N.Y.2d 429, 436 (1995)).  Third-Party Plaintiffs have not alleged anything approaching the conduct proscribed under Section 8-107(18).  There is no allegation of a boycott, and no suggestion that Judlau engaged in "[a]n action designed to achieve the social or economic isolation of an adversary, esp[ecially] by the concerted refusal to do business with it."  *Boycott*, BLACK'S LAW DICTIONARY (10th ed. 2014).  In fact, Third-Party Plaintiffs allege that Judlau entered into at least two agreements with Tightseal and hired Tightseal to perform work on a construction project.  That belies any claim that Judlau boycotted their business.  Though Tightseal and Dickerson allege that Judlau terminated the Subcontract, there is no suggestion of a concerted effort by Judlau to blacklist Tightseal or Dickerson or to disadvantage them by preventing them from contracting with others in the industry.  The sole allegation of a boycott — that Judlau "discriminat[ed] against [ ] Dickerson based on race and Tightseal based on boycott" (Am. Compl. ¶ 106) — is entirely conclusory.  Without more, that allegation is insufficient to state a claim under Section 8-107(18).  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals, ... supported by mere conclusory statements, do not suffice [to state a claim].").

### c.    The Breach of Contract Claim Survives

"[T]o state a claim of breach of contract, the complaint must allege: [i] the formation of a contract between the parties; [ii] performance by the plaintiff; [iii] failure of defendant to perform; and [iv] damages."  *Johnson* v. *Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).  At the pleading stage,

"Plaintiff's burden is slight." *Precise-Marketing Corp.* v. *Simpson Paper Co.*, No. 95 Civ. 5629 (LMM), 1996 WL 285364, at *1 (S.D.N.Y. May 30, 1996); *see also Royal Park Inv. SA/NV* v. *The Bank of N.Y. Mellon*, No. 14 Civ. 6502 (GHW), 2016 WL 899320, at *5 (S.D.N.Y. Mar. 2, 2016) (describing the pleading standard as a "low bar"). A party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b). *Bayerische Landesbank, N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012). And "[c]ourts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *OneWest Bank N.A.* v. *Lehman Bros. Holding Inc.*, No. 14 Civ. 8916 (JMF), 2015 WL 1808947, at *4 (S.D.N.Y. Apr. 20, 2015) (citation omitted).

Here, Third-Party Plaintiffs allege that "Judlau [ ] improperly terminated Tightseal['s] contract by acting in bad faith and terminating the contract for reasons that are based on racial animus." (Am. Compl. ¶ 50).[9] The Amended

---

[9]     The pleadings do not specify which Third-Party Plaintiff has advanced the breach of contract claim. Although the Amended Third-Party Complaint at times refers to "Plaintiffs" when discussing that claim (*see* Am. Compl. ¶ 116), the pleadings suggest that Tightseal, and not Dickerson, was party to the contracts (*see id.* at ¶ 19 ("Judlau and *Tightseal* signed a joint check agreement." (emphasis added)), ¶ 23 ("*Tightseal* and Judlau entered into at least two separate written agreements." (emphasis added)). Third-Party Plaintiffs do not allege that Dickerson was a third-party beneficiary or that he could otherwise assert claims under either contract. And although Dickerson was an officer of Tightseal, that alone does not provide standing to bring a breach of contract claim. *See Wein* v. *Fensterstock*, No. 04 Civ. 4640 (RO), 2004 WL 2423684, at *1 (S.D.N.Y. Oct. 28, 2004) (holding that a corporate officer "lacks standing to vindicate the rights of his ... corporation"); *see also Empire Volkswagen, Inc.* v. *World-Wide Volkswagen Corp.*, 627 F. Supp. 1202, 1212 (S.D.N.Y. 1986) (holding that breach of contract claim may only be asserted by contracting party or third-party beneficiary). Accordingly, the Court finds that, even if Third-Party Plaintiffs intended to bring the breach of contract claim on behalf of both Tightseal and Dickerson, the latter would not have standing to bring the claim. The Court therefore will address the merits of the claim solely as to Tightseal.

Third-Party Complaint identifies two separate agreements that Judlau allegedly breached: the JCA and the Subcontract. (*See, e.g.*, Am. Compl. ¶¶ 71-73).

Judlau argues that the breach of contract claim fails because Third-Party Plaintiffs have not specified which provisions of the agreements were allegedly breached. (Def. Br. 15-16; Def. Reply 6-7). To support its claim, Judlau relies exclusively on decisions from New York state courts. However, federal courts apply federal, not state, pleading requirements. *See Thorsen* v. *Sons of Norway*, 996 F. Supp. 2d 143, 163-64 (E.D.N.Y. 2014). Because New York courts often "command a greater degree of specificity in pleading contract-breach claims [ ] than may be required in federal court," *Dong* v. *Ng*, No. 08 Civ. 917 (JGK) (MHD), 2011 WL 2150544, at *5 n.7 (S.D.N.Y. Mar. 8, 2011), Judlau's citations are largely inapt. That is particularly so because the federal pleading requirements are not as stringent as Judlau would have them. Indeed, courts in this Circuit have explained that "a Plaintiff's [pleading] burden is slight," *Simpson Paper*, 1996 WL 285364, at *1, and that Plaintiff "does not need to attach a copy of the alleged contract to his complaint or quote directly from the contract," but instead must only allege the "essential terms" of the contract, *Fink* v. *Time Warner Cable*, 810 F. Supp. 2d 633, 644-45 (S.D.N.Y. 2011).

Here, Third-Party Plaintiffs have adequately alleged breaches of both the Subcontract and the JCA. As to the former, they allege that Tightseal and Judlau executed a subcontract that identified the work that Tightseal was required to perform on the Project. (Am. Compl. ¶ 24). They allege that

Tightseal performed the requisite work under the Subcontract, which included "Removal of Fire Standpipe System, Light Wall Trench Demolition, Cast-In-Place Concrete Lighting Trench, and Light Trench Finishing (waterproofing)[.]" (Subcontract, Ex. A; Am. Compl. ¶¶ 70, 75). Third-Party Plaintiffs further allege that "Judlau refused to pay Tightseal fifteen days after it was paid by the owner contrary to the [S]ubcontract[.]" (Am. Compl. ¶ 73).[10] Finally, they allege that they suffered pecuniary damages as a result of Judlau's breach. (*Id.* at ¶¶ 73-80, 116).

As to the JCA, Third-Party Plaintiffs allege that this agreement required Judlau to make fringe benefit payments to various union funds on Tightseal's behalf. (Am. Compl. ¶ 17). They further allege that, under the terms of the JCA, Judlau had a "fiduciary duty of paying the union employee[s'] fringe benefits by making the payments to the welfare funds directly without the money passing through Tightseal." (*Id.*). Third-Party Plaintiffs contend that "Judlau without any good basis declined to enforce the [JCA] creating the situation where the [union fund contributions] were not paid." (*Id.* at ¶ 21). As a result of said breach, they were "forced to assume responsibility for … payment [of the fringe benefit funds]." (*Id.* at ¶ 22). These allegations, together with those relating to the Subcontract, suffice to state a claim for breach of

---

[10]     Third-Party Plaintiffs also allege that Judlau breached the Subcontract when it terminated the agreement with "only three days['] notice." (Am. Compl. ¶¶ 47, 81). That claim appears to be foreclosed by the terms of the Subcontract, which allows Judlau to terminate at will with three days' notice. (Subcontract 9 ("[Judlau] shall have the right, by three (3) days written notice, to terminate and cancel this Agreement, without [Tightseal] being at fault, for its own convenience, and require the Subcontractor to stop work immediately.")).

contract under New York law.  Accordingly, Judlau's motion to dismiss the

breach of contract claim is denied.[11]

### d. The Unjust Enrichment Claim Fails

Third-Party Plaintiffs assert an unjust enrichment claim, alleging that

"Judlau benefitted from money that should have been paid to Tightseal that it

has refused to release to Tightseal."  (Am. Compl. ¶¶ 117-18).  As the Court

reads the Amended Third-Party Complaint, this relates to Judlau's refusal to

pay Tightseal "fifteen days after it was paid by the owner contrary to the

[S]ubcontract[.]"  (*Id.* at ¶ 73; *see also id.* at ¶ 22 ("Judlau is keeping the money

that belong[s] to Tightseal and is supposed to be used to pay the welfare

fund[s.]"), ¶ 74 ("Judlau acted in an unreasonable way by making up

unsubstantiated and meaningless stories regarding Tightseal's refusal to pay

---

[11]    Judlau argues that, under the terms of the Subcontract, Third-Party Plaintiffs have
waived their breach of contract claims because they failed to provide written notice
within two calendar days of having sustained such damage.  (Def. Br. 17-18).  The
Court cannot find, at this stage of the litigation, that Third-Party Plaintiffs have waived
their claims.  To begin with, under New York law, "when a party to a contract materially
breaches that contract, it cannot then enforce that contract against a non-breaching
party."  *Nadeau* v. *Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 641
(S.D.N.Y. 2017) (citing *In re Lavigne*, 14 F.3d 379, 387 (2d Cir. 1997) (explaining that a
"non-breaching party will be discharged from … its obligations under the contract when
the breach goes to the root of the contract")).  Judlau has not persuaded the Court that
it could enforce the Subcontract's claims provision if, as Third-Party Plaintiffs have
alleged, Judlau improperly rescinded the Subcontract on January 5, 2017.  In addition,
though Third-Party Plaintiffs do not explicitly state that they provided Judlau with
written notice of their claims within two days of having sustained any damages, they do
allege that they performed "all … responsibilities under the contract" and that "Judlau
promised Tightseal and Dickerson that the money due Tightseal will be paid without
any problem," which suggests that Third-Party Plaintiffs may have provided Judlau with
notice of their claims.  (Am. Compl. ¶¶ 14, 36).  Judlau notes that Third-Party Plaintiffs
have failed to address its waiver argument in their opposition brief, and urges the Court
to construe Third-Party Plaintiffs' silence as a concession.  This the Court will not do,
given the number of other issues that Third-Party Plaintiffs were required to address in
their opposition brief, as well as the relative brevity of Judlau's own discussion on the
issue.

union benefits when the money to pay the benefit[s] was one hundred percent within the control of Judlau[,] and Tightseal was never paid at any time directly by the owner.")).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish [i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted). The New York Court of Appeals has explained that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter[.]" *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (citing *Blanchard* v. *Blanchard,* 201 N.Y. 134 (1911)). Put differently, "when a 'matter is controlled by contract,' the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall* v. *Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (quoting *Goldman* v. *Metro Life Ins. Co.*, 5 N.Y.3d 561, 587 (2005)). That is because "[t]he theory of unjust enrichment lies as a quasi-contract claim[:] It is an obligation the law creates in the absence of any agreement." *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (quoting *Goldman*, 5 N.Y.3d at 572).

It is undisputed that the parties' dispute arises from a valid and enforceable contract. (*See* Am. Compl. ¶ 24 ("Judlau entered into a contract with Tightseal to furnish certain work, labor, and services[ ] necessary for the construction project known as [the] Queens Midtown Tunnel Rehabilitation

Project[.]"); Def. Br. 1 ("In May 2015, Judlau subcontracted a portion of its work … on the Queens Midtown Tunnel Rehabilitation project to Tightseal.")). And counsel has submitted an executed copy of the Subcontract for the Court's review. (*See generally* Subcontract). Neither party has presented — nor can the Court independently identify — any basis to question the validity of the contracts at issue. Accordingly, the unjust enrichment claim fails as a matter of law.

### 3. The Court Is Unpersuaded by Judlau's Argument Regarding the Prolixity of the Pleadings

Finally, Judlau argues that the Amended Third-Party Complaint should be dismissed as prolix pursuant to Rule 8(a). (Def. Br. 18-20). Judlau is correct that courts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory. *See Ceparano* v. *Suffolk Cty.*, No. 10 Civ. 2030 (SJF) (ATK), 2010 WL 5437212, at *3 (E.D.N.Y. Dec. 15, 2010) (collecting cases); *Miller* v. *Citicorp*, No. 95 Civ. 9728 (LAP), 1997 WL 96569, at *10-11 (S.D.N.Y. Mar. 4, 1997) (citing *Donovan* v. *City of New York*, No. 94 Civ. 3228 (JSM), 1994 WL 603210, at *1 (S.D.N.Y. Nov. 1, 1994)). But the pleadings in this action, even as characterized by Judlau, do not approach the prolixity required to justify dismissal.

Judlau describes the Amended Third-Party Complaint as "repetitive, disorganized and incomprehensibly vague as to which claims, exactly, are before the Court." (Def. Br. 19). While not a model pleading, it is "not so opaque as to defy understanding or prevent the [d]efendant[ ] from answering." *ReSource N.E. of Long Island, Inc.* v. *Town of Babylon*, 80 F. Supp. 2d 52, 57

(E.D.N.Y. 2000); *see also Simmons* v. *Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (explaining that dismissal is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." (internal quotation marks and citation omitted)).  Judlau has responded to the Amended Third-Party Complaint, which lays out five distinct causes of action (Am. Compl. ¶¶ 100-18), with the instant motion to dismiss (*see* Def. Br.).  The pleadings provide Judlau with sufficient notice of the substance of the claims at issue, all of which relate to Third-Party Plaintiffs' allegations that Judlau, motivated by racial animus, improperly terminated the contract with Tightseal and reneged on an agreement to pay certain union fringe benefits.  (*See* Am. Compl. ¶¶ 16-20, 23-24, 42-50, 61-62, 65, 71-80, 84-86).  By any measure, the pleadings give Judlau "fair notice of the substantive and factual grounds upon which the claim rests[.]"  *Shapiro* v. *Goldman*, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *15 (S.D.N.Y. Aug. 15, 2016).  And though the Amended Third-Party Complaint does include 118 individual paragraphs, many of the paragraphs consist of a single sentence, rendering the paragraph count a poor proxy for overall length.  The Court does not consider the pleadings to be impermissibly vague or overlong, and will not dismiss the Amended Third-Party Complaint for prolixity.[12]

---

[12]    Although Third-Party Plaintiffs have failed to respond to Judlau's prolixity argument, the Court will not infer that they have conceded the point through silence.  Dismissal of the case for prolixity is a drastic remedy, and inappropriate where, as here, the pleadings are not in fact unintelligible, incomprehensible, or impermissibly vague.

**CONCLUSION**

For the foregoing reasons, Judlau's motion to dismiss IS GRANTED IN PART and DENIED IN PART. In particular, Tightseal's Section 1981 claim and its breach of contract claim survive the motion to dismiss.

Judlau is ORDERED to file an answer or otherwise respond to the Amended Third-Party Complaint within 21 days of the date of this Order. Within 14 days thereafter, the parties shall submit a joint status letter and a proposed Civil Case Management Plan, as outlined in the Notice of Initial Pretrial Conference in this matter. (Dkt. #6). The parties are forewarned that, once the Court approves any proposed discovery deadlines, it will thereafter be disinclined to extend those deadlines.

The Clerk of Court is directed to terminate the motion at Docket Entry 42.

SO ORDERED.

Dated:    August 14, 2018
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge